IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IRVING H. BENNION, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, et al, )<br>)<br>Defendants. )<br>) | Case No. CV04-614-N-EJL<br><br>MEMORANDUM ORDER |

A number of legal issues were raised in the trial briefs filed by the parties. The trial was originally set to begin December 12, 2006, however the Court determined a hearing on the legal issues would be necessary before the trial could begin. The Court held a hearing on December 14, 2006, regarding the three legal issues identified during an earlier telephonic hearing with the parties. The Court will now issue its written ruling on those issues.

1. Expert testimony of Joe Shuksteris, Physical Therapist.

Joe Shuksteris, Physical Therapist is listed on Plaintiff's witness list to testify as an expert witness on the standard of care. Plaintiff's counsel argued at the hearing this expert's name had been disclosed in June. The United States stated it had never received any disclosure of Mr. Shuksteris' name until the witness list was filed with the Court on November 28, 2006. Plaintiff's counsel could not provide evidence of an earlier disclosure than November 28, 2006 and admitted no expert report had ever been provided to Defendant.

The Court's Scheduling Order (Docket No. 7) states Plaintiff shall disclose expert witnesses by December 8, 2005 and rebuttal expert witnesses by January 23, 2006. Although Plaintiff answered an interrogatory that indicated the physical therapist expert would be identified at a later date, Plaintiff's counsel never moved to extend the disclosure deadline and failed to comply with the expert disclosure requirements of Fed. R. Civ. P. 26. Accordingly, the disclosure of Mr.

Shuksteris in the witness list is not timely and completely deficient since no expert report was ever provided and Plaintiff has provided no justification for the late naming of his physical therapist expert. To allow Mr. Shuksteris to testify would be unfairly prejudicial to the Defendant. Pursuant to Fed. R. Civ. P. 37, the sanction for failure to timely disclose information on this expert is that the expert will not be allowed to testify. See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101 (9th Cir. 2001).

2. Premises Liability.

For the claims pursuant to the Federal Tort Claims Act, the Court applied the substantive law of the state of Idaho which is the state wherein the alleged wrongful conduct occurred. See LaFromboise v. Leavitt, 439 F.3d 792 (8th Cir. 2006). The United States claims it is not the proper party for a premises liability claim as the United States is not the owner or operator of the Coeur d'Alene Tribe Wellness Center. The Coeur d'Alene Tribe is the owner and the operator in control of the facilities.[1] Plaintiff argues because the United States provides funding for the Wellness Center, it is also liable under the premises liability cause of action. The United States, and not the Coeur d'Alene Tribe, is the defendant in this action. Under the Federal Tort Claims Act, the United States is liable for the tortious acts committed by employees of the United States, which includes employees of any federal agency. 28 U.S.C. § 2671; 28 U.S.C. § 2674. Bennion's injury occurred at the Coeur d'Alene Tribal Wellness Center, which is controlled by the Indian Health Service. The Indian Health Service is an agency of the Public Health Service. 25 U.S.C. § 1661. Therefore, the United States is liable for the tortious conduct of the employees of that agency regarding the negligence claim, but the Court must determine independently, if the United States is the proper defendant for the premises liability claim. The Court has examined the tribal compact referenced by the parties. The compact clearly establishes that the Wellness Center is owned and operated by the Coeur d'Alene Tribe and the Coeur d'Alene Tribe is in control of the premises.

---

[1] The Court has previously determined that Plaintiff's notice of tort claim was sufficiently broad to include a claim for premises liability, however, in making such ruling the Court did not determine if the United States was the proper party to bring such a claim against. See Docket No. 20.

MEMORANDUM ORDER - Page 2
06ORDERS\BENNIONWPD

In Idaho, the duty of a landowner to the person injured on the premises turns on the status of the injured person. Holzheimer v. Johannesen, 125 Idaho 397, 399, 871 P.2d 814, 816 (1994). Here the injured person was an invitee. "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." Id. At 400, 871 P.2d at 817. A landowner's duty to an invitee is to warn of hidden or concealed dangers and to keep the land in a reasonably safe condition. Id.

"Additionally, the general rule of premises liability is that one having control of the premises may be liable for failure to keep the premises in repair." Heath v. Honker's Mini-Mart, Inc., 134 Idaho 711, 713, 8 P.3d 1254, 1256 (2000) (citations omitted). "Either a tenant, or a landlord, or both, may be liable to a third party for injuries resulting from negligent repairs of failure to repair premises. . . . a tenant or lessee, having control of the premises is deemed, so far as third parties are concerned, to be the owner. . . ." Harrison v. Taylor, 115 Idaho 588, 596, 768 P.2d 1321, 1329 (1989).

The Court finds as a matter of law that the United States is not the owner or operator of the premises and cannot be held liable for a premises liability claim that the Coeur d'Alene Tribe failed to warn of a hidden or concealed danger or failed to keep the steam room in a reasonably safe condition. This conclusion is supported by the Tribal Compact and Tribal resolutions and Plaintiff has provided no evidence that the United States is the owner or operator. Accordingly, the premises liability claim against the United States must be dismissed.

3. Expert Testimony of Dr. Adams.

The United States argues that Plaintiff's expert witness, Dr. Adams a Cardiovascular and Thoracic Surgeon is not qualified to testify as to the standard of care for a physical therapist in Plummer, Idaho in 2002 and the expert report disclosure by Plaintiff was deficient. Plaintiff argues he should be allowed to rehabilitate Dr. Adams' expert report and the Court should allow him to testify.

In a medical malpractice case, the testimony of expert doctors is crucial in deciding whether the alleged negligence breached the applicable standard of care. Generally, expert testimony is required to establish causation in a medical malpractice action. Newberry v. Martens, 142 Idaho 284, 127 P.3d 187 (2005). Idaho Code § 6-1012 requires a plaintiff to affirmatively prove by direct expert testimony that the health care provider negligently failed to meet the community standard of health care, as it existed at the time and place of the alleged negligent act. "The plaintiff in a medical malpractice action must demonstrate by the use of expert medical testimony that the defendant negligently failed to meet the applicable standard of health care as it existed at the time and place of the alleged malpractice." Foster v. Traul, 141 Idaho 890, 893, 120 P.3d 278, 281 (2005) (citing Dulaney v. St. Alphonsus Regional Medical Center, 137 Idaho 160, 164, 45 P.3d 816, 820 (2002)). "Community" means the geographical area served by the nearest licensed general hospital. Idaho Code § 6-1012.

Lay persons are not normally qualified to testify regarding alleged malpractice. Flowerdew v. Warner, 90 Idaho 164, 409 P.2d 110 (1965) (patient was not qualified to testify that his injury was caused by physician's treatment). The Court acknowledges there are exceptions when other competent evidence would establish the alleged malpractice (i.e. doctor amputated wrong limb). However the general rule is:

> Where the subject matter regarding the cause of disease, injury, or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion, only an expert can competently give opinion evidence as to the cause of death, disease or physical condition.

Quoting 31A Am.Jur.2d, Expert & Opinion Evidence § 207 in Evans v. Twin Falls County, 118 Idaho 210, 214, 796 P.2d 87, 91 (1990).

It is the opinion of this Court that the case at bar does not involve the type of alleged medical malpractice that can be established by way of lay testimony. Therefore, Plaintiff will only be able to proceed to trial if the testimony of Dr. Adams is allowed. The Court did not have the opportunity to review Dr. Adams' expert report until it was provided to the Court by the Defendant at the hearing. The Court will now address the arguments regarding the sufficiency of the expert report and qualifications of Dr. Adams to testify in this case.

The requirements of Fed. R. Civ. P. 26(a)(2) are not complex and must be complied with to assure a level playing field for all parties. An expert report shall be in writing, prepared and signed by the expert, and must also include the following:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other [similar] cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B) and D. Idaho L. Civ. R. 26.2(b).[2]

Rule 37(c) of the Fed. R. Civ. P. provides for the exclusion of an expert witness if the discovery rules have not been complied with. Rule 37(c) states:

> (1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording a opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

In order to avoid sanctions, Plaintiffs have the burden of establishing that they had a "substantial justification" for the late filing of the expert report and that the late filing was "harmless" to Defendant. Yeti By Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). The rules on expert disclosure exist to avoid attorneys on either side of a case from being blind-sided. The Court finds Plaintiff's counsel has not exercised the best legal practices in disclosing Plaintiff's experts' opinions.

First, the expert report does not set forth similar trials Dr. Adams has testified in or his fee arrangement. During the hearing, Plaintiff's counsel stated that such was not disclosed as there are no similar trials he has testified in and the fee arrangement has not been determined yet as Dr. Adams regularly serves as an expert witness for Plaintiff's counsel. The Court finds this excuse for

---

[2]The Local Rules slightly modify the obligation under Fed. R. Civ. P. 26(a)(2)(B) to provide a listing of "similar" cases in which the witness has testified as an expert in the preceding four years.

failing to comply with the technical requirements of an expert report to be completely meritless. The opposing party should not have to guess when information is omitted. The expert report should have indicated that he has not testified in similar trials within the applicable time period and that his fee arrangement is still being negotiated, but that in other cases this expert was compensated and provide a range of fees.

Second, the expert report of Dr. Adams was never supplemented to include the required information or other information relied upon by Dr. Adams.

Third, the expert report does not satisfy the requirements under Idaho law. Idaho Code § 6-1013 sets forth the foundation that expert witness must show:

a) that such opinion is actually held by the expert witness;
b) that the expert witness can testify to the opinion with a reasonable degree of medical certainty;
c) that the expert witness possesses the professional knowledge and expertise; and
d) that the expert witness has actual knowledge of the community standard of care to which his expert opinion is addressed.

Idaho Code § 6-1012 defines the applicable standard of care:

a) the standard of care for the class of health care provider to which the defendant belonged and was functioning, taking into account the defendant's training, experience, and fields of medical specialization, if any;
b) as such standard existed at the time of the defendant's alleged negligence; and
c) as such standard existed at the place of the defendant's alleged negligence.

The expert report does not set forth how a Cardiovascular and Thoracic Surgeon is qualified to testify as to the standard of care for a physical therapist. "It is necessary for an expert testifying as to the standard of care to 'state how he or she became familiar with that standard of care.'" Newberry v. Martens, 142 Idaho 284, 291, 127 P.3d 187, 195 (2005). The report states on page 1, "I am qualified to render an opinion on the standard of care, or any deviation from the accepted standard of care in this case." However, there is no explanation or disclosure of how this cardiovascular and thoracic surgeon is familiar with the standard of care for a physical therapist. While it may be possible for a Cardiovascular and Thoracic Surgeon to be familiar with the standard of care for a physical therapist, the expert report does not establish how this would occur in this case since Dr. Adams has not published or given lectures in the field of physical therapy, holds no

degrees or certifications in the field of physical therapy and has never practiced as a physical therapist.

In Newberry, the court stated it is unnecessary for an expert to be of the same specialty as the defendant so long as the expert establishes he possesses "actual knowledge" of the standard of care.  In Newberry, an ophthalmologist who practiced in the same community testified regarding the standard of care for a family practice physician based on his professional interactions with family practice physicians in the area at the same time as the alleged malpractice occurred.

In this case, the expert report does not indicate that Dr. Adams regularly refers patients to physical therapy or that he studied physical therapy during his studies to become a surgeon.  Instead, counsel for Plaintiff argued at the hearing, that Dr. Adams is familiar with the general standard of care for all medical providers to do no harm.  This general statement is insufficient to qualify Dr. Adams as an expert on the standard of care for a physical therapist.

Moreover, the expert report does not set forth how Dr. Adams is familiar with the local community standard of care for physical therapists in Plummer, Idaho with five years of experience in 2002.  Idaho law requires the expert witness to have actual knowledge of the local standard of care for the "class of health care provider."  "Inquiring with a local specialist is '[o]ne method and expert may obtain such knowledge, but it is not the only method.'" Id. at 291, 127 P.3d at 195 (citations omitted).  No where in the expert report does it indicate that Dr. Adams had actual knowledge or that he inquired as to the local standard of care for physical therapists in Plummer, Idaho.  Plaintiff's counsel argued at the hearing, that Dr. Adams relied on Mr. Smith's (the physical therapist alleged to have breached the standard of care) deposition testimony that the standard of care for a physical therapist in Plummer is the same as the standard of care for a physical therapist in Idaho or anywhere in the nation.  This reliance does not satisfy the requirement that the expert have actual knowledge of the local standard of care, it merely establishes that the standard of care for physical therapists was not different in Plummer, Idaho than anywhere else in the nation.  Moreover, Defendant's counsel represented to the Court that Mr. Smith's deposition was taken after the expert report disclosure by Mr. Adams, so he could not have relied on such statement to become

familiar with the local standard of care since no supplementation of the expert report was ever completed.

Plaintiff next argued at the hearing that Dr. Adams consulted with Mr. Shuksteris regarding the standard of care for a physical therapist. Again, this consultation is not disclosed in the expert report and no supplementation of the expert report was provided. Moreover, Mr. Shuksteris does not practice physical therapy in Idaho, so it is unclear to the Court how he could provide information to Dr. Adams regarding the local community standard. It is possible that Dr. Adams could rely on the deposition testimony of Mr. Smith and then consult with a physical therapist regarding the standard of care, but no such disclosure was ever made regarding Dr. Adams' opinions. As stated earlier, Fed. R. Civ. P. 26 (a)(2)(B) requires "the report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data and other information considered by the witness in forming the opinions . . . ." Clearly, Dr. Adams has not disclosed the basis for his knowledge of the standard of care for a physical therapist or his actual knowledge of the community standard of care for physical therapists and his written expert report does not satisfy the requirements of Idaho Code §§ 6-1012 and 6-1013.

Fourth, the expert report does not state Mr. Smith's actions were below the standard of care. The complaint in this case was filed on December 29, 2004. In the Complaint, Plaintiff alleges Dan Smith was Mr. Bennion's physical therapist on the date the injury in the steam room occurred. However, Dr. Adams report dated June 29, 2004 states:

> I do however find significant and potentially life threatening departures from the accepted standard of care in the treatment and supervision of Mr. Bennion by the members (yet unnamed or identified) of the Benewah Medical and Wellness Center located in Plummer, Idaho. . . . It is a gross departure from the standard of care and life threatening to allow a [cardiovascular] patient to enter a sauna, supervised or unsupervised.

No where in the expert report does Dr. Adams conclude Mr. Smith was the negligent health care provider. Nor was the expert report ever supplemented to identify Mr. Smith, who was identified in the Complaint, as the negligent physical therapist.

In sum, Plaintiff has not carried its burden in complying with the applicable rules of disclosure regarding expert witnesses. This Court takes seriously counsel's responsibility to comply

with discovery rules and the failure to comply must also be dealt with seriously. Pursuant to Rule 37, a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial. In order to avoid sanctions, Plaintiff has the burden of establishing that he had a "substantial justification" for the incomplete expert report as well as the failure to supplement the expert report and that effect of the non-compliance with the rules is "harmless" to Defendant. Yeti By Molly Ltd v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001). The Court finds under the procedural factual background of this case, the Plaintiff has failed to carry his burden as Plaintiff has not provided substantial justification for failing to comply with the expert disclosure rules and the impact to Defendant is more than "harmless" on the eve of the start of the trial.

The Court considered allowing a less severe sanction such as requiring Dr. Adams' testimony to be limited to his expert report, however, since the expert report is fatally deficient under Idaho law allowing such testimony would simply be a waste of the parties' resources, since ultimately the expert did not disclose his qualifications or knowledge of the local standard of care physical therapy or who he believed acted negligently. It would be unfairly prejudicial to the Defendant to allow Plaintiff to rehabilitate his expert with a supplemental expert report days before trial is to begin where no justification or good cause has been provided for Plaintiff's failure to comply with the expert disclosure and supplementation discovery rules. Therefore, the Court finds the proper sanction in this case is to not permit Dr. Adams' testimony at trial. Unfortunately for Plaintiff, the effect of this ruling is that Plaintiff's negligence cause of action must be dismissed as Plaintiff has no other expert witness to establish the alleged breach of duty in this malpractice action which requires expert testimony regarding the alleged breach of standard of care.

Being fully advised in the premises, the Court hereby orders that Plaintiff's negligence and premises liability causes of action are dismissed and judgment shall be entered in favor of the Defendant.

DATED: **December 18, 2006**

_____
Honorable Edward J. Lodge
U. S. District Judge